## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Department of Homeland Security ("DHS") (collectively the "United States"), Alisa T. Silverman ("Silverman"), Athena Services International, LLC ("ASI") and Athena Joint Venture Services, LLC ("AJVS"), and Todd Pattison ("Relator") (hereafter collectively referred to as "the Parties"), through their authorized representatives.

RECITALS

A.    Silverman is the owner of ASI and, through ASI, an owner of AJVS, whose principal place of business is 4905 Del Ray Avenue, Suite 402, Bethesda, Maryland. ASI and AJVS provided protective security guard services for federal buildings pursuant to contracts awarded by the Federal Protective Service ("FPS"), a component of DHS. ASI purports to be a Woman-Owned Small Business (WOSB) and small disadvantaged business. ASI served as a subcontractor to Paragon Systems, Inc. ("Paragon"), one of the Federal government's largest providers of protective security guard services. ASI and AJVS served as prime contractors on federal contracts for such guard services on which Paragon served as the subcontractor, and ASI was a subcontractor on Paragon's federal contracts. From 2014 to the present time, ASI and AJVS were subcontractors or the prime contractors on at least eleven DHS FPS contracts. In July 2023, Paragon terminated all subcontracts with ASI. In August 2023, Paragon terminated its subcontractor status with ASI.

B.    On December 22, 2021, Pattison filed a *qui tam* action in the United States District Court for the District of Maryland captioned *United States ex rel. Pattison v.*

*Paragon Systems, Inc., et al.*, No. 21-cv-3260-TDC (D. Md.), pursuant to the *qui tam*

provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the Civil Action), naming as

defendants, *inter alia,* ASI and AJVS.  On or about August 30, the United States

intervened in the Civil Action.

      C.    The United States contends that it has certain civil claims against

Silverman, ASI, and AJVS, jointly and severally, occurring from January 1, 2014 through

December 31, 2023 (hereinafter referred to as the "Covered Conduct"):

      1.    Silverman, ASI, and AJVS knowingly engaged in a scheme with
five now-former high-ranking Paragon executives for ASI and AJVS to obtain
DHS set-aside contracts reserved for WOSBs and small disadvantaged businesses.
Under the scheme, ASI also was falsely designated as a small business
subcontractor on Paragon contracts.  Silverman, ASI, and AJVS knew that the
alleged scheme deprived legitimate small businesses of contracting opportunities
intended for WOSBs, and 8(a) companies.  Silverman falsely certified ASI as a
WOSB and a small business while knowing that the company was controlled by
Paragon.

      2.    The former high-ranking Paragon officials who carried out this
scheme included the company's President, Vice President of Business
Development ("VP BD"), Vice President of Operations, Manager of Compliance,
and Manager of Contracting (collectively, the "Paragon Executives").  Among
other things, Silverman and the VP BD, who is Silverman's brother-in-law,
incorporated ASI to be a small business subcontractor to Paragon and to pay
kickbacks disguised as consulting fees to the Paragon Executives.  At the time of
the incorporation of ASI, Silverman had no government contracting experience
and virtually no business experience.  Silverman and ASI later created AJVS, a
joint venture with Paragon, which was created to obtain small business set aside
contracts.  Silverman served as the figurehead owner of ASI and later AJVS in
order for those companies to qualify as WOSB and/or small disadvantaged
business while ASI and AJVS were under the operational control of the Paragon
Executives.

      3.    The Paragon Executives controlled nearly all day-to-day
operations of ASI and AJVS.  Paragon personnel provided substantially all
administrative support, managed finances and hiring, and provided all contracting
support, including preparing bids and other proposals to be submitted in the
names of the purported small businesses, preparing false and back-dated business
records, and controlling their bank accounts.  Among other efforts to hide their
control of ASI and AJVS, the Paragon Manager of Compliance and Manager of

Contracts used anonymized email addresses set up by Silverman, the VP BD, and ASI to conceal their identities while they operated ASI and AJVS and interacted with other Paragon employees, third parties, and government personnel. Because of the operational control exercised by the Paragon Executives, ASI and AJVS were affiliated with Paragon under applicable SBA rules, and, as a result, Silverman, ASI, and AJVS knew that the purported small businesses were not eligible for the set-aside contracts awarded to them or to serve as small business contractors to Paragon. Nonetheless, at the direction of the Paragon Executives, ASI and AJVS obtained Federal set-aside contracts from DHS and subcontracted substantially all work under the contracts to Paragon.

4.     In connection with the DHS contracts awarded to Paragon, ASI and AJVS, ASI surreptitiously paid substantial sums of money to four of the Paragon Executives, namely Paragon's President, VP BD, and the Contracts and Compliance Managers in violation of the Anti-Kickback Act (AKA), 41 U.S.C. § 8702. These Paragon Executives and ASI attempted to conceal these kickbacks as purported "consulting payments" made to various shell companies formed by these Paragon Executives. ASI made over 250 separate payments to these Paragon Executives and their shell companies, totaling more than $4.6 million, which constituted 75% of ASI's profits. While ASI's financial records identified the payments as compensation for "consulting services," the shell companies were not operating businesses, and Silverman, ASI, and these Paragon Executives referred to the payments as "distributions" in their private email and text message communications. The amounts of the kickbacks were also improperly included in the contract prices charged to DHS in further violation of the AKA.

5.     Silverman, ASI, AJVS, the VP BD, and the Compliance and Contracts Managers made multiple false statements directly to DHS concerning ASI's small business status and denying that ASI and AJVS had certain prohibited financial relationships. These false statements were relevant to, *inter alia,* the award of the AJVS contract.

6.     In 2020, Silverman and ASI prepared and submitted a loan application for Paycheck Protection Program ("PPP") funds and received $1.45 million in PPP funds, which was forgiven in full in 2021. Due to ASI's affiliation with Paragon, ASI exceeded the applicable size limitation for a PPP loan. In its application for loan forgiveness, ASI, through Silverman, falsely represented that ASI complied with all program rules and used at least 60% of the loan proceeds for ASI payroll. Contrary to its representations to SBA that the PPP loan proceeds were used for ASI payroll, the loan proceeds were segregated from other funds as "members' equity" and distributed to the former Paragon executives.

The conduct described above in Paragraph C is referred to below as the "Covered

Conduct."

D.      This Settlement Agreement is neither an admission of liability by
Silverman, ASI, or AJVS nor a concession by the United States that its claims are not
well founded.

E.      Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the
proceeds of this Settlement.

To avoid the delay, uncertainty, inconvenience, and expense of protracted
litigation of the above claims, and in consideration of the mutual promises and
obligations of this Settlement Agreement, the Parties agree and covenant as follows:

<u>TERMS AND CONDITIONS</u>

1.      Silverman, ASI, and AJVS shall pay to the United States the initial
payment and the contingent payments described below (collectively "the Settlement
Amount"), all of which are restitution, by electronic funds transfer pursuant to written
instructions to be provided by the Civil Division of the United States Department of
Justice, as set forth below.

a.      <u>Silverman, ASI, and AJVS Initial Payment</u>:  Within thirty days of
the Settlement Date, Silverman, ASI, and AJVS shall pay $35,000 to the United
States.

b.      <u>Silverman Contingent Payments</u>:   For the next five years (from the
date of the Settlement Agreement to December 31, 2029), to the extent that
Silverman's income from all sources, including but not limited to ASI and AJVS,
exceeds $200,000 on Line 11 of her federal income return ("Adjusted Gross
Income" or "AGI"), she shall pay 70% of her AGI to the United States.  The
following funds will not be included in the calculation of her AGI: (1) health

insurance provided by her employer(s); (b) contributions to her current Keough retirement account up to the applicable regulatory limit for her age; and (c) distributions from ASI for the purpose of paying ASI's federal and state income taxes.

c.    <u>ASI contingent payments</u>:

(1)    <u>Quarterly Payments from Utah-Wyoming Contract</u>:  To the extent that ASI remains a contractor under the FPS Contract for protective security guards at federal facilities located in Utah and Wyoming (Contract Number:  70RFPW23DW8000001) ("UT-WY Contract"), ASI shall make quarterly payments of $125,000 to the United States.  The first payment is due on March 31, 2025.  The obligation to make these payments shall end on March 31, 2028 or until the UT-WY Contract terminates or otherwise concludes if at an earlier date.

(a)    To the extent that ASI make payments of $25,000 or more per quarter to another creditor identified to the United States, ASI shall provide the United States will copies of proof of payment to the Department of Justice at the time of the quarterly payments discussed in Paragraph 1(b) above.  Should ASI cease to make those payment, ASI's contingent payments will increase by $25,000 to $150,000.

(2)    <u>ASI's New Contracts</u>:  For five years from the date of the settlement agreement, if ASI obtains additional contracts, ASI shall pay the United States two (2) percent of the gross revenue of such contracts.

(3)     Sale of ASI:  For five years from the date of the settlement agreement, in the event that ASI is sold, ASI shall pay the United States 50% of the gross sale price over $100,000 for ASI.  This payment shall be net of any indebtedness and reasonable transactional expenses incurred to accomplish the sale of the business. Indebtedness is defined as long-term liabilities not captured in working capital, such as mortgage, line of credit or term loan.  Transactional expenses include the following, as applicable: attorney's fees and expenses; accountant/financial advisor's fees and expenses; Investment banking/finder's fees; Fees and expenses in connection with representation and warranty insurance policies, if applicable; costs, fees and expenses of Escrow Agent; and cost of tail policies provided that none of the commissions are paid to Silverman, the VP OP, the President, the Managers, their families, or members of their households.

(a)     Multiple sales of under $100,000 will be combined to reach the $100,000 threshold.

(b)     This provision does not apply to the sale of used tangible assets, such as office equipment, weapons, or ballistic vests, but does apply to the sale of accounts receivables or the transfer of contracts.

(c)     Prior to the sale or transfer of ASI, ASI will provide the United States with a valuation report.

(d)     To the extent that ASI is transferred for less than

80% of its fair market value, ASI's entire working capital shall be transferred to the United States and the transferee will continue to make the quarterly payments described in Paragraph 1(b) above until the expiration of 5 years or the termination of the UT-WY Contract.

(e)     To the extent that ASI is transferred for fair market value, distributions to the United States will be made as outlined in C(3) above, and future quarterly payments will cease.

(f)     To the extent that ASI's assets, stock or accounts receivable are mortgaged or otherwise encumbered, the United States shall receive 25% of the proceeds of the mortgage funds.

(4)    Closure of ASI:   In the event that ASI ceases to do business, future quarterly payments shall cease, and the United States shall be entitled to 50% of its working capital and other assets.

(5)    _De Facto_ Closure of ASI:   In the event that ASI does not receive any contracts or generate any revenues for six months, it shall give notice to the United States, and it shall be deemed defunct.  ASI's stock and assets shall be sold, and 33% of the proceeds of all combined sales over $100,000 shall be paid to the United States.  ASI's obligation to make future quarterly payments shall cease.

(a)     Multiple sales of assets under $100K will be combined to prevent seriatim sales.

(b)     The forced sale of ASI may be postponed on a

showing of good cause made two months prior to the six month
deadline.

   c.     <u>AJVS contingencies</u>:

       (1)     Silverman, ASI, and AJVS have represented that AJVS has
no assets exceeding $1,000.

           (a)     Should assets worth more than $20,000 owned by
AJVS be discovered, those assets will be treated in
accordance with Paragraph 8 relating to accuracy of
financials disclosures by Silverman, ASI, and AJVS.

       (2)     Dissolution papers for AJVS shall be signed by Silverman
and ASI and provided to the United States.

       (3)     Neither Silverman not ASI shall taken any action to re-
instate or operate AJVS as a corporate entity.

   2.     Conditioned upon the United States receiving the Settlement Amount
payments, the United States agrees that it shall pay to Relator by electronic funds transfer
17.5 percent of each such payment received under the Settlement Agreement (Relator's
Share) as soon as feasible after receipt of the payment.  No other relator share payments
shall be made by the United States with respect to the matters covered by this Agreement
as to Silverman, ASI, and AJVS only.

   3.     Subject to the exceptions in Paragraph 5 (concerning reserved claims)
below and subject to Paragraph 8 (concerning disclosure of assets), Paragraph 14
(concerning default), and Paragraph 15 (concerning bankruptcy) below, and upon the
United States' receipt of the Settlement Amount, the United States releases Silverman,

- 8 -

ASI, and AJVS, from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Anti-Kickback Act, 41 U.S.C. § 8706(a)(1)&(2); the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of breach of contract, payment by mistake, unjust enrichment, and fraud.

4.    Subject to the exceptions in Paragraph 5 (concerning reserved claims) below and subject to Paragraph 8 (concerning disclosure of assets), Paragraph 14 (concerning default), and Paragraph 15 (concerning bankruptcy) below, and upon the United States' receipt of the Settlement Amount, Relator, for himself and for his heirs, successors, attorneys, agents, and assigns, releases Silverman, ASI, and AJVS from any civil monetary claim the Relator has on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733.

5.    Notwithstanding the releases given in Paragraph 5 of this Agreement, or any other term of this Agreement, the following claims and rights of the United States are specifically reserved and are not released:

      a.    Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

      b.    Any criminal liability;

      c.    Except as explicitly stated in this Agreement, any administrative liability or enforcement right, or any administrative remedy, including the suspension and debarment rights of any federal agency;

d.  Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e.  Any liability based upon obligations created by this Agreement;

f.  Any liability of individuals, other than Silverman, including but not limited to any former owners, members, employees, independent contractors, and/or consultants of ASI or AJVS;

g.  Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

h.  Any liability for failure to deliver goods or services due; and

i.  Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

6.  Relator and his heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relator's receipt of the Relator's Share, Relator and his/her heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action with respect to Silverman, ASI and AJVS only.

7.  Relator, for himself, and for his heirs, successors, attorneys, agents, and assigns, releases Silverman, ASI, AJVS, and its current officers, current agents, and

current employees, from any liability to Relator arising from the filing of the Civil

Action, or under 31 U.S.C. § 3730(d) for expenses or attorneys' fees and costs.

8.    Silverman, ASI, and AJVS have provided sworn financial disclosures and

supporting documents (Financial Disclosures) to the United States and the United States

has relied on the accuracy and completeness of those Financial Disclosures in reaching

this Agreement. Silverman, ASI, and AJVS warrant that the Financial Disclosures are

complete, accurate, and current as of the Effective Date of this Agreement. If the United

States learns of asset(s) in which Silverman, ASI, and AJVS had an interest of any kind

as of the Effective Date of this Agreement (including, but not limited to, promises by

insurers or other third parties to satisfy Silverman, ASI, and AJVS' obligations under this

Agreement) that were not disclosed in the Financial Disclosures, or if the United States

learns of any false statement or misrepresentation by Silverman, ASI, and AJVS on, or in

connection with, the Financial Disclosures, and if such nondisclosure, false statement, or

misrepresentation changes the estimated net worth set forth in the Financial Disclosures

by $20,000 or more, the United States may at its option: (a) rescind this Agreement and

reinstate its suit or file suit based on the Covered Conduct or (b) collect the full

Settlement Amount in accordance with the Agreement plus one hundred percent (100%)

of the net value of Silverman, ASI, and AJVS' previously undisclosed assets. Silverman,

ASI, and AJVS agree not to contest any collection action undertaken by the United States

pursuant to this provision, and agree that they will immediately pay the United States the

greater of (i) a ten-percent (10%) surcharge of the amount collected in the collection

action, as allowed by 28 U.S.C. § 3011(a), or (ii) the United States' reasonable attorneys'

fees and expenses incurred in such an action. In the event that the United States, pursuant

to this paragraph rescinds this Agreement, Silverman, ASI, and AJVS waive and agree not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (a) are filed by the United States within 120 calendar days of written notification to Silverman, ASI, and AJVS that this Agreement has been rescinded, and (b) relate to the Covered Conduct, except to the extent these defenses were available on December 21, 2021.

9.    Silverman, ASI, and AJVS waive and shall not assert any defenses Silverman, ASI, and AJVS' may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

10..    Silverman, ASI, and AJVS fully and finally release the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Silverman, ASI, and AJVS have asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct or the United States' investigation or prosecution thereof.

11.    Silverman, ASI, and AJVS fully and finally release the Relator from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Silverman, ASI, and AJVS have asserted, could have asserted, or may

assert in the future against the Relator, related to the Covered Conduct and the Relator's investigation and prosecution thereof.

12.    a.    Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of Silverman, ASI, and AJVS, and its present or former officers, directors, employees, shareholders, and agents in connection with:

(1)    the matters covered by this Agreement;

(2)    the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

(3)    Silverman, ASI, and AJVS' investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorneys' fees);

(4)    the negotiation and performance of this Agreement;

(5)    the payment Silverman, ASI, and AJVS make to the United States pursuant to this Agreement and any payments that Silverman, ASI, and AJVS may make to Relator, including costs and attorneys' fees,

are unallowable costs for government contracting purposes (hereinafter referred to as Unallowable Costs).

b.    Future Treatment of Unallowable Costs:  Unallowable Costs will be separately determined and accounted for by Silverman, ASI, and AJVS, and

- 13 -

Silverman, ASI, and AJVS shall not charge such Unallowable Costs directly or indirectly to any contract with the United States.

c.      Treatment of Unallowable Costs Previously Submitted for Payment: Within 90 days of the Effective Date of this Agreement, Silverman, ASI, and AJVS shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs included in payments previously sought by Silverman, ASI, and AJVS or any of its subsidiaries or affiliates from the United States. Silverman, ASI, and AJVS agree that the United States, at a minimum, shall be entitled to recoup from Silverman, ASI, and AJVS any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted requests for payment. The United States, including the Department of Justice and/or the affected agencies, reserves its rights to audit, examine, or re-examine Silverman, ASI, and AJVS' books and records and to disagree with any calculations submitted by Silverman, ASI, and AJVS or any of its subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by Silverman, ASI, and AJVS, or the effect of any such Unallowable Costs on the amount of such payments.

13.      Silverman, ASI, and AJVS agree to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Agreement. Upon reasonable notice, Silverman will make herself available for interviews and testimony, consistent with her rights and privileges. Upon reasonable notice, Silverman, ASI, and AJVS shall encourage, and agree not to impair, the cooperation of ASI's current and former directors, officers, and employees, and shall use best efforts to make

available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. Silverman, ASI, and AJVS further agree to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf.

14.    The Settlement Amount represents the amount the United States is willing to accept in compromise of its civil claims arising from the Covered Conduct due solely to Silverman, ASI, and AJVS' financial condition as reflected in the Financial Disclosures referenced in Paragraph 8.

a.    In the event that Silverman, ASI, and AJVS fail to pay the Settlement Amount as provided in the payment schedule set forth in Paragraph 1 above, Silverman, ASI, and AJVS shall be in Default of Silverman, ASI, and AJVS' payment obligations ("Default"). The United States will provide a written Notice of Default, and Silverman, ASI, and AJVS shall have an opportunity to cure such Default within thirty (30) calendar days from the date of receipt of the Notice of Default by making the payment due under the payment schedule and paying any additional interest accruing under the Settlement Agreement up to the date of payment. Notice of Default will be delivered to Silverman, ASI, and AJVS, or to such other representative as Silverman, ASI, and AJVS shall designate in advance in writing, via overnight delivery, at the following addresses:

    (1)     Alisa Silverman
               9608 Hall Road
               Potomac, MD 20854

    (2)     Holly Drumheller Butler, Esq.
               Miles Stockbridge, LLC
               100 Light Street
               Baltimore, MD 21202

If Silverman, ASI, and AJVS fail to cure the Default within thirty (30) calendar days of receiving the Notice of Default and in the absence of an agreement with the United States to a modified payment schedule ("Uncured Default"), the remaining unpaid balance of the Settlement Amount shall become immediately due and payable, and interest on the remaining unpaid balance shall thereafter accrue at the rate of 12% per annum, compounded daily from the date of Default, on the remaining unpaid total (principal and interest balance).

    b.     In the event of Uncured Default, Silverman, ASI, and AJVS agree that the United States, at its sole discretion, may (i) retain any payments previously made, rescind this Agreement and pursue the Civil Action or bring any civil and/or administrative claim, action, or proceeding against Silverman, ASI, and AJVS for the claims that would otherwise be covered by the releases provided in Paragraph 4 above, with any recovery reduced by the amount of any payments previously made by Silverman, ASI, and AJVS to the United States under this Agreement; (ii) take any action to enforce this Agreement in a new action or by reinstating the Civil Action; (iii) offset the remaining unpaid balance from any amounts due and owing to Silverman, ASI, and AJVS and/or affiliated companies by any department, agency, or agent of the United States at the time of Default or subsequently; and/or (iv)  exercise any other right granted by law, or

- 16 -

under the terms of this Agreement, or recognizable at common law or in equity.
The United States shall be entitled to any other rights granted by law or in equity
by reason of Default, including referral of this matter for private collection. In the
event the United States pursues a collection action, Silverman, ASI, and AJVS
agree immediately to pay the United States the greater of (i) a ten-percent (10%)
surcharge of the amount collected, as allowed by 28 U.S.C. § 3011(a), or (ii) the
United States' reasonable attorneys' fees and expenses incurred in such an
action. In the event that the United States opts to rescind this Agreement pursuant
to this paragraph, Silverman, ASI, and AJVS waive and agree not to plead, argue,
or otherwise raise any defenses of statute of limitations, laches, estoppel or similar
theories, to any civil or administrative claims that are (i) filed by the United States
against Silverman, ASI, and AJVS within 120 days of written notification that this
Agreement has been rescinded, and (ii) relate to the Covered Conduct, except to
the extent these defenses were available on December 21, 2021. Silverman, ASI,
and AJVS agree not to contest any offset, recoupment, and /or collection action
undertaken by the United States pursuant to this paragraph, either administratively
or in any state or federal court, except on the grounds of actual payment to the
United States.

15.    In exchange for valuable consideration provided in this Agreement,
Silverman, ASI, and AJVS and Relator acknowledge the following:

a.    Silverman, ASI, and AJVS has reviewed its financial situation and
warrants that it is solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and

548(a)(1)(B)(ii)(I) and shall remain solvent following payment to the United
States of the Settlement Amount.

b.    In evaluating whether to execute this Agreement, the Parties intend
that the mutual promises, covenants, and obligations set forth herein constitute a
contemporaneous exchange for new value given to Silverman, ASI, and AJVS,
within the meaning of 11 U.S.C. § 547(c)(1), and the Parties conclude that these
mutual promises, covenants, and obligations do, in fact, constitute such a
contemporaneous exchange.

c.    The mutual promises, covenants, and obligations set forth herein
are intended by the Parties to, and do in fact, constitute a reasonably equivalent
exchange of value.

d.    The Parties do not intend to hinder, delay, or defraud any entity to
which Silverman, ASI, and AJVS was or became indebted to on or after the date
of any transfer contemplated in this Agreement, within the meaning of 11 U.S.C.
§ 548(a)(1).

e.    If  any of Silverman, ASI, and AJVS' payments or obligations
under this Agreement are avoided for any reason (including but not limited to,
through the exercise of a trustee's avoidance powers under the Bankruptcy Code)
or if, before the Settlement Amount is paid in full, Silverman, ASI, and AJVS or a
third party commences a case, proceeding, or other action under any law relating
to bankruptcy, insolvency, reorganization, or relief of debtors seeking any order
for relief of Silverman, ASI, and AJVS' debts, or to adjudicate Silverman, ASI,
and AJVS as bankrupt or insolvent; or seeking appointment of a receiver, trustee,

custodian, or other similar official for Silverman, ASI, and AJVS or for all or any substantial part of Silverman, ASI, and AJVS' assets:

(i)    the United States may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against Silverman, ASI, and AJVS for the claims that would otherwise be covered by the releases provided in Paragraph 4 above;

(ii)    the United States has an undisputed, noncontingent, and liquidated allowed claim against Silverman, ASI, and AJVS in the amount of $33,030,942, less any payments received pursuant to Paragraph 1 of this Agreement, provided, however, that such payments are not otherwise avoided and recovered from the United States by a receiver, trustee, creditor, custodian, or similar official;

(iii)    if any payments are avoided and recovered by a receiver, trustee, creditor, custodian, or similar official, the United States shall not be responsible for the return of any amounts already paid by the United States to the Relator; and

(iv)    if, notwithstanding subparagraph (iii), any amounts already paid by the United States to the Relator pursuant to Paragraph 2 are recovered from the United States in an action or proceeding filed by a receiver, trustee, creditor, custodian, or similar official in or in connection with a bankruptcy case that is filed within two years of the Effective Date of this Agreement or of any payment made under Paragraph 1 of this Agreement, Relator shall, within thirty days of written notice from the United States to

the undersigned Relator's counsel, return to the United States all amounts recovered from the United States.

  f.  Silverman, ASI, and AJVS agree that any civil and/or administrative claim, action, or proceeding brought by the United States under Paragraph 17.e is not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) because it would be an exercise of the United States' police and regulatory power. Silverman, ASI, and AJVS shall not argue or otherwise contend that the United States' claim, action, or proceeding is subject to an automatic stay and, to the extent necessary, consents to relief from the automatic stay for cause under 11 U.S.C. § 362(d)(1). Silverman, ASI, and AJVS waive and shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claim, action, or proceeding brought by the United States within 120 days of written notification to Silverman, ASI, and AJVS that the releases have been rescinded pursuant to this paragraph, except to the extent such defenses were available on December 21, 2021.

  16.  This Agreement is intended to be for the benefit of the Parties only.

  17.  Upon receipt of the initial payment described in Paragraph 1, above, the United States and the Relator shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of Defendants ASI and AJVS from the Civil Action pursuant to Rule 41(a)(1).

  18.  Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

19.     Each Party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

20.     This Agreement is governed by the laws of the United States.  The exclusive venue for any dispute relating to this Agreement is the United States District Court for the District of Maryland.  For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

21.     This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties. Forbearance by the United States from pursuing any remedy or relief available to it under this Agreement shall not constitute a waiver of rights under this Agreement.

22.     The undersigned counsel represents and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

23.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

24.     This Agreement is binding on Silverman, ASI, and AJVS' successors, transferees, heirs, and assigns.

25.     This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

26.     All Parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

27.    This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement).  Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

[SIGNATURE PAGES FOLLOW]

## THE UNITED STATES OF AMERICA

DATED: November 5, 2024          BY: _____
Alicia J. Bentley
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
United States Department of Justice

DATED: November 04, 2024          BY: _____
Sarah Marquardt
Assistant United States Attorney
Office of the United States Attorney
District of Maryland

**ALISA SILVERMAN, ATHENA SERVICES INTERNATIONAL, LLC AND ATHENA JOINT VENTURE SERVICES, LLC**

DATED: November ⎵, 2024          BY: _____
                                            Alisa T. Silverman

DATED: November ⎵, 2024          BY: _____
                                            Athena Services International, LLC
                                            Alisa Silverman, President

DATED: November ⎵, 2024          BY: _____
                                            Athena Joint Ventures Services, LLC
                                            Alisa Silverman, President

DATED: November ⎵, 2024          BY: _____
                                            Holly Drumheller Butler
                                            Miles Stockbridge, LLC
                                            Counsel for Alisa T. Silverman, Athena
                                            Services International, LLC, and Athena
                                            Joint Ventures Services, LLC

**RELATOR TODD PATTISON**

DATED: November _1_, 2024        BY: *Todd Pattison*
                                    Todd Pattison


DATED: November _1_, 2024        BY: _____
                                    John W. Tremblay
                                    Peter W. Chatfield
                                    Phillips & Cohen LLP
                                    Counsel for Relator